Harvey WOLCHUCK,
Plaintiff–Appellant,

v.

Otis R. BOWEN, M.D., Secretary of
Health and Human Services,
Defendant–Appellee.

No. 88–5980.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 6, 1989 *.

Decided March 30, 1989.

---

* The panel unanimously found this case suitable for decision without oral argument. Fed. R. App. P. 34(a) and Ninth Circuit Rule 34–4.

Edmund Parent, Santa Barbara, Cal., for plaintiff-appellant.

Nancy E. Wever, Asst. Regional Counsel, Dept. of Health and Human Services, San Francisco, Cal., for defendant-appellee.

Before FLETCHER, PREGERSON and LEAVY, Circuit Judges.

PREGERSON, Circuit Judge:

The district court upheld the final decision of the Secretary of Health and Human Services (HHS) that appellant Harvey Wolchuck, who applied for father's insurance benefits in 1985, was not entitled to retroactive benefits from the time of his wife's death in 1981 because he did not express an "intent" to apply for benefits in an application form he submitted to HHS at that time. We reverse the district court on the ground that under the Secretary's previous interpretation of the relevant regulations, appellant's 1981 statement that he would not apply for benefits because his expected earnings precluded eligibility represented an expression of "doubtful intent" to file for benefits, and thus constituted a "filing" under the relevant regulations. Where doubt exists concerning a claimant's intention to file for benefits, the rule is that the doubt should be resolved by finding an intent to file. We reverse the district court's holding that there was no intent to file for benefits because the holding was not supported by substantial evidence in the record, and because the district court applied an incorrect legal standard in characterizing appellant's 1981 statement concerning intent to file.

## I. BACKGROUND

In August of 1981, shortly after his wife's death, appellant Harvey Wolchuck applied to HHS for a lump sum death payment.[1] In his application, he made the following statement (hereinafter "the 1981 statement"):

I will not file for father's benefits as I am working and estimate earnings of $15,000 for 1981.

Certified Administrative Record (CAR) at 33.

Father's insurance benefits (hereinafter "father's benefits" or "benefits") are provided under section 202(g)(1) of the Social Security Act ("the Act"), 42 U.S.C. section 402(g)(1). This section provides, in pertinent part, that the surviving spouse of an individual who died fully or currently in-

---

1. The lump sum payment is not itself at issue in   this case.

sured is entitled to father's benefits if he is not married, is not entitled to a surviving spouse benefit or old age benefits, has filed an application for father's benefits or was entitled to a spouse's insurance benefit on the basis of the wages and self-employment income of such individual for the month preceding the month in which said individual died, and at the time of filing his application has in his care a child of such individual entitled to a child's insurance benefit. *See also* 20 C.F.R. § 404.339 (1988).

■ It is well settled that the filing of an application is a prerequisite to entitlement to benefits under the Social Security Act. *Schweiker v. Hansen,* 450 U.S. 785, 790, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685, *reh'g denied,* 451 U.S. 1032, 101 S.Ct. 3023, 69 L.Ed.2d 401 (1981). However, under 20 C.F.R. section 404.630, the filing date of an earlier written statement filed with HHS will be used as the filing date of a subsequently filed application if the earlier statement indicates an intent to claim benefits. 20 C.F.R. § 404.630.[2] Such a written statement, therefore, is treated as a "filing" for purposes of obtaining benefits under the Social Security Act. Accordingly, the filing date of the written statement establishes the date from which benefits are provided. *See* 20 C.F.R. § 404.621.

On June 27, 1985, appellant filed a formal application for father's benefits. He was awarded benefits for the period beginning December 1984, thus receiving the six months of retroactive benefits provided by 20 C.F.R. section 404.621. Appellant, however, sought and obtained a hearing before an administrative law judge (ALJ) to argue that he should receive father's benefits beginning with the date of his wife's death in 1981. According to appellant, the 1981 statement indicated an intent to claim father's benefits, and his 1981 (and post 1981)

earnings had been less than anticipated, making him entitled to receive father's benefits for those years.

To support his position, appellant relied on 20 C.F.R. section 404.630, *supra,* and Social Security Ruling (hereinafter "SSR" or "Ruling") 76–30.[3] Specifically, appellant contended that his 1981 statement indicated an "intent to claim benefits" for purposes of 20 C.F.R. section 404.630 as that phrase was interpreted by HHS in SSR 76–30. That Ruling first noted that where a written statement raises sufficient doubt about the writer's intention to file for benefits, "the doubt should be resolved by finding an intent to file." SSR 76–30 at 116. The Ruling then went on to find that the written statement "I do not wish to file for [my] wife and child now since I have no immediate plans of retirement" raised a level of doubt regarding intent to apply for benefits sufficient to justify HHS in construing the statement as an expression of such intent.

The ALJ rejected appellant's arguments. Decision, July 31, 1986. The ALJ found that appellant was not entitled to father's benefits prior to December 1984 because his 1985 application had only six months retroactivity, and his 1981 statement did not establish intent or doubtful intent to claim father's benefits. *Id.* The ALJ's decision became the final decision of the Secretary when the Appeals Council denied appellant's request for review on November 24, 1987.

Appellant brought this action in district court pursuant to section 205(g) of the Act, 42 U.S.C. section 405(g), to obtain judicial review of the Secretary's final decision. Following cross-motions for summary judgment, the Magistrate recommended that summary judgment be entered for the Secretary and against appellant. Clerk's

---

**2.** 20 C.F.R. section 404.630 provides, in part:

If a written statement, such as a letter, indicating [the claimant's] intent to claim benefits either for [the claimant] or for another person is filed with [HHS] ..., [HHS] will use the filing date of the written statement as the filing date of the application, if all the following requirements are met:

(a) The statement indicates an intent to claim benefits....

**3.** Social Security Rulings are binding on the Secretary. *See* 20 C.F.R. § 422.408 ("Social Security Rulings are published under the authority of the Commissioner of Social Security and are binding on all components of the Administration.").

Record (C.R.) 17. Over appellant's objection, the district court adopted the Magistrate's recommended findings. C.R. 19. Judgment for the Secretary was entered on March 7, 1988. C.R. 20.

Appellant now appeals the district court's judgment, arguing that his 1981 statement raised sufficient doubt concerning his intent to file for father's benefits to justify reversal of the district court.

## II. STANDARD OF REVIEW

■] The granting of summary judgment is reviewed *de novo*. *Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir.1985). Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Judicial review under 42 U.S.C. section 405(g) is limited to a determination of whether the Secretary's findings of fact are supported by substantial evidence and whether the proper legal standards were applied. *Driver v. Heckler*, 779 F.2d 509, 510 (9th Cir.1985). Substantial evidence is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Miller*, 770 F.2d at 848. The substantial evidence determination is based on the record as a whole. *Driver*, 779 F.2d at 510.

The Secretary's application of regulations will be upheld unless arbitrary and capricious. *See* 5 U.S.C. §§ 701 *et seq.*; *Villa View Community Hospital, Inc. v. Heckler*, 720 F.2d 1086, 1090 & n. 10 (9th Cir.1983).

## III. DISCUSSION

On its face, appellant's 1981 statement "I will not file for father's benefits as I am working and estimate earnings of $15,000 for 1981" conveys an intent not to apply for father's benefits. By itself, it would be difficult to construe such a statement as indicating even a doubt concerning whether appellant would file for benefits. None-

theless, appellant makes a persuasive argument that this language is legally indistinguishable from the statement which HHS, in SSR 76–30, found to express a "doubtful intent" to apply for benefits and thus to constitute a "filing" for the purpose of obtaining retroactive benefits from the date of that statement.

### A. *SSR 76–30*

In SSR 76–30, the claimant had applied for retirement insurance benefits for himself but not for his wife and son. He stated on his application: "I do not wish to file for [my] wife and child now since I have no immediate plans of retirement." The issue was whether that statement qualified as a written statement indicating an intention to claim benefits on behalf of another person. The Ruling stated:

The only evidence concerning the wage earner's intent with respect to the purported filing for his wife and child was the statement previously quoted [*supra*] and specific reference to his wife and child ... on the wage earner's application. The written statement indicates that the wage earner's sole reason for not wishing to file for benefits was his concern that his retirement plans would in some way make it disadvantageous for him to file or at least nullify any advantages that may arise from the filing. This simply is not the case, however. It clearly would have been advantageous under applicable provisions of the Social Security Act for him to have filed regardless of his retirement plans.

\* \* \* \* \* \*

Accordingly, since it would not have been in the interest of the wage earner's dependents to have their filing delayed solely because of the wage earner's retirement plans and since the wage earner indicated in his written statement that the absence of plans to retire was the basis for his purported wish not to file, the written statement may be viewed by SSA[4] as raising doubt about the wage earner's intent to file and ... SSA may

---

4. The Social Security Administration (SSA) is an agency within the Department of Health and

Human Services. For the sake of convenience, this opinion will refer to both as "HHS."

find that the wage earner did intend to file as required by [the regulation]. SSR 76–30 at 116–17.

Appellant argues that the considerations which led HHS to grant retroactive benefits to the date of the written statement in SSR 76–30 are present in this case. First, appellant's 1981 statement indicates that his sole reason for not filing for benefits was his belief that his earnings would in some way make it disadvantageous for him to file or at least nullify any advantages that might arise from the filing. Second, appellant argues, it would have been advantageous for him to have applied for benefits regardless of his projected 1981 earnings. There was no advantage to not filing, because if appellant's projection was higher than his actual earnings, he might lose benefits to which he would have been entitled. He had nothing to lose by filing, he contends, because if he had in fact earned in excess of the earning limits, he simply would not have drawn benefits for that year.[5] Thus, according to appellant, no disadvantage other than nonpayment of benefits for which he was otherwise eligible could have resulted had his income level been, as he believed, too high to meet the earnings limits for father's benefits.[6]

### B. The ALJ's Interpretation of SSR 76–30

The ALJ rejected appellant's argument and held that SSR 76–30 did not apply to appellant's case. The ALJ distinguished the Ruling from appellant's case on the ground that the Ruling "pertains not to the filing for benefits on one's own behalf, but the filing for benefits of auxillary beneficiaries...." CAR at 9. "Inasmuch as the only benefits affected by Mr. Wolchuck's failure to file an application establishing earlier entitlement were his own," the ALJ reasoned, "Social Security Ruling 76–30

does not apply." Id. The ALJ went on to find that appellant in 1981 "was aware of the provisions for establishing entitlement to father's benefits and expected to have earnings that were substantially higher than those allowable under the Regulations."[7] Id. The ALJ stated: "Mr. Wolchuck clearly elected, as of August 11, 1981 ... not to file for father's benefits on his own behalf. He may have been mistaken about his estimated income for whatever reasons. Mistake, however, is not the same as doubt." Id. The ALJ concluded that "[t]here is no question of doubtful intent." Id.

The ALJ's interpretation of SSR 76–30 was incorrect. As appellant points out, the regulation which allows the date of a written statement to be used as the application date when the statement indicates an intent to claim benefits applies both to applications made on one's own behalf and to applications made on behalf of others. See 20 C.F.R. § 404.630. Nor is there any reason to think that the difference between applying for benefits for oneself or for one's dependents has any relevance to the question whether a statement such as that at issue here and in the Ruling can be construed as one expressing "doubtful intent" to apply for benefits. Moreover, to say that "mistake" is not the same as "doubt" is to ignore the Ruling's determination that doubt concerning intent to file existed because it was "not the case," as the claimant there believed, that his retirement plans made it disadvantageous for him to file for benefits for his wife and son. The Ruling does not use the word "mistake," but that is the clear import of its holding. Thus the ALJ's decision was based on legal error and, in the absence of other bases for affirming, must be reversed.

---

5. Appellant argues that excess earnings simply reduce or eliminate the amount of benefits received; they do not affect the underlying entitlement to benefits which would arise upon making application. The Secretary does not controvert this interpretation.

6. The earnings requirements are set out in 20 C.F.R. sections 404.304 and 404.415.

7. Appellant concedes that he was aware in 1981 of his possible entitlement to father's benefits. He argues, however, that he was not "adequately informed" of his right to obtain father's benefits in 1981, and did not apply in 1981 because he believed that his expected earnings made him ineligible to receive benefits.

## C. *The Magistrate's Interpretation of SSR 76–30*

■ In his Report and Recommendation, however, the Magistrate added several arguments of his own to buttress the ALJ's conclusion that appellant was entitled to benefits dating only from December 1984.[8] First, the Magistrate pointed to language in SSR 76–30 suggesting that the Ruling established a permissive rather than a mandatory rule of construction for statements concerning intent to file for benefits. According to the Magistrate, while the Ruling *permits* the Secretary to treat doubtful statements of "intent by reverse implication" as true statements of intent, the following language in the Ruling can not be taken as establishing a mandatory rule of construction: "[T]he written statement *may* be viewed by SSA as raising doubt about the wage earner's intent to file and ... SSA *may* find that the wage earner did intend to file as required by [the regulation]." C.R. 17 at 4–5 (quoting SSR 76–30) (emphasis supplied by the Magistrate).[9]

■ While it is true that the Ruling states that HHS "may" view a written statement as raising doubt about the wage earner's intent to file for benefits, SSR 76–30 at 117, the Ruling does not imply that HHS's decisionmaking may be standardless.[10] Rather, the Ruling rests upon a reasoned analysis, guided by statutory objectives, of the evidence concerning the claimant's intentions. The Ruling was based on HHS's findings that "it would not

have been in the interest of the wage earner's dependents to have their filing delayed solely because of the wage earner's retirement plans and ... the wage earner indicated in his written statement that the absence of plans to retire was the basis for his purported wish not to file...." SSR 76–30 at 117. Where a claimant can show facts of similar significance to those set forth in the Ruling, it would be arbitrary and hence impermissible for the Secretary to invoke the "permissive" language of SSR 76–30 in support of a result different from that of the Ruling. *See Villa View Community Hospital, Inc. v. Heckler*, 720 F.2d 1086, 1090 (9th Cir.1983) (reviewing court must examine the agency's interpretation of the statute and regulations and determine whether they are reasonably susceptible to the construction placed on them by the agency, both on their face and in light of prior interpretation and application).

The Magistrate concluded that the facts asserted by appellant were sufficiently different from those underlying SSR 76–30 to justify the Secretary's refusal to apply the Ruling. The Magistrate stated: "In the present case, there was evidence through the [1981] statement itself, a statement filed by plaintiff's late wife,[11] and, by inference from plaintiff's subsequent delays, that plaintiff in fact did not intend and had not intended to file for father's benefits." C.R. 17 at 5. The Magistrate concluded that the Secretary's consequent finding that appellant did not intend to file for

---

**8.** We consider the reasoning offered by the Magistrate to support his recommendation because affirmance may be based on any ground finding support in the record. *See Smith v. Block*, 784 F.2d 993, 996 n. 4 (9th Cir.1986).

**9.** The Secretary urges this court to accept the Magistrate's interpretation, and moreover argues that even if appellant's 1981 statement did show doubtful intent to apply for father's benefits, the Secretary had the discretion to find intent but was not required to do so. The Secretary misreads SSR 76–30. If appellant expressed a "doubtful intent" to apply for father's benefits in his 1981 statement, then under the Ruling the Secretary *"should"* resolve the doubt by finding an intent to file. SSR 76–30 at 116 (emphasis added). "Should" is not merely permissive; while not as mandatory as "must," it

suggests a much more restricted scope of discretion than "may." The real question, therefore, is whether SSR 76–30 gives the Secretary unlimited discretion in deciding whether to construe written statements as expressions of "doubtful intent" to file for benefits.

**10.** Even discretionary agency decisions are reviewable for abuse of discretion. *See* Administrative Procedure Act, 5 U.S.C. § 706(2)(A) (court shall set aside an agency determination that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law).

**11.** Before her death, appellant's wife applied for disability benefits. On her application, she stated: "My husband will not file for father's benefits as his earnings are to[o] high to be eligible." CAR at 25.

father's benefits in 1981 was "supported by substantial evidence" and could not be disturbed by the court. *Id.*

The facts cited by the Magistrate, however, do not appear to constitute "substantial evidence" in the context of SSR 76–30. To avoid arbitrary application of the regulations, the Secretary must show that the facts in this case suggesting lack of intent to file for benefits are significantly different from the facts noted by HHS in the Ruling. Here, the Secretary has failed to make such a showing. Our review of the record persuades us that the facts relied on by the Magistrate are not significantly different from those found in the Ruling. First, in both cases applicants had made written statements which on their face expressed an intent not to file for benefits. Second, in both cases the claimants did not file for benefits because they erroneously believed that it would not be advantageous for them to do so. Third, in SSR 76–30 "[t]he only evidence concerning the wage earner's intent with respect to the purported filing for his wife and child was the statement previously quoted [*supra*] and specific reference to his wife and child ... on the wage earner's application." SSR 76–30 at 116. Here, the 1981 statement, as we explain below, was not significantly different from the statement in the Ruling, and the record shows that in his 1981 application for lump sum death benefits appellant listed his daughter Erica in response to a request for the names of children of the deceased under the age of 18 who might be eligible for benefits. Fourth, the fact that appellant's wife had stated in her own application for benefits that appellant would not apply for father's benefits is irrelevant for purposes of determining appellant's intent. Even if it were relevant, the wife's statement reinforces rather than undercuts the force of appellant's argument that, like the claimant in SSR 76–30, his failure to apply was the result of a misconception concerning the utility of applying. Last, the inference the Magistrate drew from appellant's delay in

filing a formal application is not supported by any evidence other than the 1981 statement and appellant's wife's statement; it is therefore unwarranted.[12] In conclusion, it cannot be said that the Secretary's finding that appellant did not intend to file for father's benefits in 1981 is supported by "substantial evidence" in light of the evidence supporting the result in SSR 76–30. Therefore, it was arbitrary for the Secretary to exercise whatever discretion he has under the regulations to find that appellant's 1981 statement did not express a "doubtful intent" to apply for father's benefits.

The second reason given by the Magistrate for affirming the ALJ's decision was that a footnote of SSR 76–30 states that "[i]t does not appear that an individual could meet the application [i.e., filing] requirement for ... benefits by manifesting an intent couched in terms of a future contingency." SSR 76–30 at 115 n. 2. According to the Magistrate, appellant's 1981 statement is "at best ... a statement of intent to file a claim in the future, contingent upon his future income level." C.R. 17 at 5. Therefore, the Magistrate concluded, the 1981 statement was insufficient under SSR 76–30. *Id.*

The Magistrate's analysis is faulty. Under SSR 76–30, a statement expressing doubtful intent to file for benefits is sufficient. The statement in that Ruling could have been construed as one expressing an intent to file a claim in the future, that is, when the claimant formulated retirement plans. Instead, HHS construed the statement as one expressing doubt because it was based on a misconception of the utility of filing. Similarly, the 1981 statement cannot fairly be read as a statement of intent to file a claim in the future. Rather than a statement of intent to file contingent on future income level, the 1981 statement, because of appellant's misconception about the utility of filing, constituted a statement of intent *not* to file. For purposes of the rule against statements of

12. There is no comparable mention of the length of the delay in filing a formal application in SSR 76–30.

"contingent" intent, therefore, the 1981 statement was indistinguishable from the statement in SSR 76–30.

The Magistrate's third basis for distinguishing SSR 76–30 from this case was the notion that while the mistake of the claimant in the Ruling was one of "law," appellant's mistake was one of "fact." C.R. 17 at 5–6. According to the Magistrate, the statement of the claimant in SSR 76–30 "demonstrated an erroneous belief that, under the law, his dependents could receive no benefits unless he himself was entitled to receive benefits." Id. at 5. The Magistrate believed that appellant, by contrast, was mistaken only concerning the factual matter of the size of his 1981 income. Id. at 5–6.

Appellant contends that the Magistrate's distinction between mistakes of law and of fact is irrelevant. The only issue, argues appellant, is whether there was a "doubtful intent" to file for benefits; the cause of the "doubt" is not important. Furthermore, appellant contends, even if the distinction is relevant, his mistake was one of law. Appellant argues that he believed, in 1981, that his projected earnings made him ineligible for father's benefits, when in fact under the relevant law he was *always* eligible to receive benefits; if his income turned out to be above the permitted amount, his benefits would simply have been reduced, possibly to zero. His misunderstanding of this legal framework, he contends, is what caused him not to file. Thus his situation is indistinguishable from that of the claimant in SSR 76–30, whose failure to file also resulted from a misunderstanding of the applicable laws.

Appellant's arguments on this point are persuasive. First, the Ruling is not on its face confined to situations in which the "doubt" stems from an error of law. Nor should it matter that the error causing failure to file is one of "fact" rather than "law." According to the Secretary, the distinction between mistakes of fact and mistakes of law is important because a person like the claimant in SSR 76–30,

whose mistake is one of "law," cannot correct his mistake "on the basis of the facts known to him," whereas a person like appellant, whose mistake is assertedly one of "fact," could apply for benefits once he became aware that his income would be less than he had anticipated. The Secretary cites no cases or law to support this contention, and its logic is suspect. That is, using the Secretary's own words, *neither* type of claimant can correct his mistake "on the basis of the facts known to him" *at the time of making the written statement.* Thus there is no principled basis for the Magistrate's distinction between mistakes of fact and of law for purposes of applying SSR 76–30.

Second, appellant's argument that his mistake was in any case one of law may have merit. The Secretary does not controvert appellant's assertion that he continued to be eligible for benefits notwithstanding his expected earnings. If, as appellant argues, he would be "eligible" for benefits even when, due to excess earnings, he received no benefits in any given year, then his misunderstanding of his status could be characterized as an error of "law" similar to that made by the claimant in SSR 76–30. Because appellant's mistake about his eligibility, and his consequent confusion concerning the utility or disadvantages of filing for benefits, were the reasons he failed to file for benefits, his 1981 statement cannot fairly be distinguished from the statement that was the subject of SSR 76–30.

The Magistrate's fourth reason for affirming the ALJ [13] was that "[w]hile the claimant's statement in Ruling 76–30 implies at least a future intent to file a claim, plaintiff's statement and subsequent actions in the present case [i.e., failure to file until 1985] indicate that he had no intent as of 1981 to file any claim." C.R. 17 at 6. This argument is unpersuasive. First, the statement in the Ruling, like appellant's here, indicated no intent to file any claim "as of" the year the statement was made. Any claim which the Ruling's claimant might make would have been filed, obvious-

---

**13.** The Magistrate included this argument in his discussion of the fact/law distinction, *supra.*

Because it seems to be somewhat distinct, we discuss it separately.

ly, after the time "as of" which his statement had been made. Thus "as of" the time the Ruling's claimant made his statement he, like appellant in 1981, had no intention of filing a claim. Second, while appellant's 1981 statement indeed indicated no intent to file in 1981, the very reference in the statement to the earnings he projected for 1981 is analogous to the reference the Ruling's claimant made to the lack of present retirement plans. Thus it is equally possible to read the statement in SSR 76–30 as implying an intention to file after formulation of retirement plans as it is to read appellant's 1981 statement as implying an intention, *in 1981*, to file a claim in any year following 1981. Ultimately, then, appellant's 1981 statement cannot fairly be distinguished from that of the Ruling's claimant.

## IV. CONCLUSION

In conclusion, neither the ALJ nor the Magistrate provided any persuasive grounds for refusing to apply SSR 76–30 to this case. Nor has the Secretary presented any legal authority supporting the district court's decision. Because HHS and the district court failed to apply the proper legal standard and because their decisions were not supported by substantial evidence, we reverse the district court and hold that SSR 76–30 governs this case. The Ruling requires that HHS treat appellant's 1981 statement as a statement of intent to file for benefits. HHS must therefore substitute the filing date of the 1981 statement for the filing date of appellant's formal application for father's benefits and provide appellant father's benefits retroactive to the date of filing of his written statement.

REVERSED.